T.C. Memo. 2009-297

UNITED STATES TAX COURT

MARY E. BJELLAND, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CARL E. KNOCHELMANN, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 20407-07, 21208-07.    Filed December 22, 2009.

Mary E. Bjelland, pro se.

Carl E. Knochelmann, Jr., pro se.

<u>Emily J. Giometti</u>, for respondent.

MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  Respondent determined deficiencies of

$1,474 and $2,092 in the 2004 Federal income taxes of petitioners

Mary E. Bjelland (Ms. Bjelland) and Carl E. Knochelmann (Mr.

Knochelmann), respectively. Both have claimed their son (EJK) as a dependent on their separately filed 2004 Federal income tax returns.

The issues in these cases turn mainly on which parent may claim EJK as a dependent. We must decide which parent, because of him, is entitled to a dependency exemption deduction, a child care tax credit, and a child tax credit. We must also decide whether Mr. Knochelmann is entitled to head of household filing status and an additional child tax credit.[1]

The parties submitted these cases fully stipulated under Rule 122. The stipulated facts are so found, and the stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

Unless otherwise stated, section references are to the Internal Revenue Code in effect for 2004, and Rule references are to the Tax Court Rules of Practice and Procedure.[2]

---

[1]An "additional child tax credit" is the portion of any credits that is refunded under sec. 24(d). See infra note 3.

[2]This sentence is of particular importance in these cases because both Mr. Knochelmann and respondent appear to rely at times on provisions in versions of the Internal Revenue Code and the regulations thereunder that are inapplicable to 2004. See infra note 5.

## Background

Both Ms. Bjelland and Mr. Knochelmann resided in Kentucky when they filed their respective petitions.

Ms. Bjelland and Mr. Knochelmann each timely filed a 2004 Federal income tax return. On her return, Ms. Bjelland claimed two dependency exemption deductions (only one of which is in issue), a child care tax credit, and a child tax credit. On his return, Mr. Knochelmann claimed head of household filing status, one dependency exemption deduction, a child care tax credit, a child tax credit, and an additional child tax credit.

Petitioners, who have never been married to each other, share joint custody of EJK. During 2004, pursuant to a court-mandated parenting plan, petitioners generally shared physical custody of EJK on the following biweekly schedule. During the first week, Mr. Knochelmann had custody from 8 a.m. Wednesday until 5:30 p.m. Friday; during the second week, he had custody from 8 a.m. Thursday until 5:30 p.m. Monday. Ms. Bjelland had custody at all other times; i.e., during the first week from 5:30 p.m. Monday through 8 a.m. Wednesday and from 5:30 p.m. Friday of the first week through 8 a.m. Thursday of the second week. Holidays, birthdays, and vacations were shared according to an alternative schedule. Disregarding the alternative schedule, Ms. Bjelland had physical custody of EJK for 8 nights and 173 hours during each 2004 biweekly period, and Mr. Knochelmann had

physical custody of him for 6 nights and 163 hours during each
such period.

## Discussion

### I. Relevant Provisions of the Internal Revenue Code

Section 151 allows deductions for personal exemptions. An
unmarried individual is entitled to a personal exemption for
himself or herself and an additional exemption for each
dependent. See sec. 151(c). Under section 152(a), the term
"dependent" includes a son or daughter of the taxpayer "over half
of whose support, for the calendar year * * * was received from
the taxpayer". Section 152(e) defines "support" for a child of
divorced or otherwise separated parents. In pertinent part,
section 152(e) provides:

> SEC. 152(e). Support Test in Case of Child of
> Divorced Parents, Etc.--
>
> > (1) Custodial parent gets exemption.
> > * * * if--
>
> > > (A) a child * * * receives over half of his
> > > support during the calendar year from his
> > > parents--
>
> > > > * * * * * * *
>
> > > > (iii) who live apart at all times during
> > > > the last 6 months of the calendar year, and
>
> > > > (B) such child is in the custody of one or
> > > > both of his parents for more than one-half of the
> > > > calendar year,
>
> > such child shall be treated, for purposes of subsection
> > (a), as receiving over half of his support during the
> > calendar year from the parent having custody for a

greater portion of the calendar year (hereinafter * * * referred to as the "custodial parent").

If a taxpayer maintains a household that includes "a dependent of the taxpayer who is under the age of 13 and with respect to whom the taxpayer is entitled to a deduction under section 151(c)", sec. 21(b)(1)(A), then section 21(a) allows the taxpayer a tax credit for certain employment-related expenses. Section 24(a) allows a taxpayer a $1,000 tax credit for each "qualifying child". That term includes a child of the taxpayer under the age of 17 for whom "the taxpayer is allowed a deduction under section 151". Sec. 24(c)(1).[3]

Section 1(b) applies an advantageous tax rate to the taxable income of unmarried individuals who qualify as "heads of households". Compare sec. 1(b) with sec. 1(c) (rate generally applicable to taxable income of unmarried individuals). Under section 2(b)(1), the term "head of a household" includes an individual unmarried at the end of the taxable year who, among other things, "maintains as his home a household which constitutes for more than one-half of such taxable year the

---

[3]The total credits allowed under sec. 24(a) generally cannot be more than the taxpayer's tax liability. See sec. 24(b)(3). A portion of any credits disallowed because they exceed the taxpayer's tax liability may be refunded to the taxpayer under sec. 24(d). The refundable amount under sec. 24(d) is referred to as an "additional child tax credit". E.g., Richmond v. Commissioner, T.C. Memo. 2009-207.

principal place of abode, as a member of such household, of * * * a son * * * of the taxpayer".

## II.  Principal Question

To resolve most of the questions these cases present, we must decide, within the meaning of section 152, of which petitioner EJK was a dependent for 2004.  That turns on which petitioner is treated as providing more than half of EJK's support for 2004, and that turns on which petitioner had custody of EJK for a greater portion of 2004.  In other words, we must decide for 2004 which petitioner was his custodial parent within the meaning of section 152(e)(1).  Mr. Knochelmann's claim to head of household filing status turns on the similar question of whether his home was EJK's principal place of abode for more than half of 2004.

## III.  Arguments of the Parties

### A.  Mr. Knochelmann's Arguments

Mr. Knochelmann argues that he is entitled to claim EJK as his dependent for 2004 because he provided more than half of EJK's support for that year.  He adds:  "Any analysis of 26 USC 151, 152 that does not result in the parent who provided more than half of the support for a minor child as being entitled to claim him as a dependent would violate due process (absent an agreement to the contrary)."

Moreover, Mr. Knochelmann argues that he is entitled to claim EJK as his dependent for 2004 because he is the parent with whom EJK "resided for the longest period of time during" that year. He reaches his conclusion by counting only EJK's waking hours because, according to him, that is when the cost to support EJK was incurred.[4]

B. Ms. Bjelland's Arguments

Ms. Bjelland argues that she is entitled to claim EJK as her dependent for 2004 because EJK "lives with her for the greater part of the year."

C. Respondent's Argument

Respondent argues simply:

> Petitioner Bjelland had custody of * * * [EJK] for more hours * * * during 2004 than did petitioner Knochelmann. Petitioner Bjelland therefore qualifies as the custodial parent for 2004, as she had custody of * * * [EJK] for a slightly longer period of time than did petitioner Knochelmann.

---

[4]Mr. Knochelmann concedes that Ms. Bjelland had custody of EJK for both more hours and "more night time" during 2004 than he did. He proposes that we find that he had custody of EJK for both "more days" and "more day time" during 2004 than she did. He argues:

> The actual hours of the day Petitioner Knochelmann has EJK are during the daytime which is the cost bearing time of day. The time unit to measure which Petitioner has EJK the majority of time should be "days". Any other unit of time would mask the support cost for each Petitioner and would violate due process since there would not be any rational basis for any other time unit in this case.

IV.  Discussion

Section 152, as it was in effect in 2004,[5] controls whether EJK was for that year Mr. Knochelmann's dependent or Ms. Bjelland's dependent.  We need not determine whether Mr. Knochelmann in fact provided most of EJK's support for 2004 because the actual support test in section 152(a) gives way to the deemed support test in section 152(e) in the case of certain parents who live apart at all times during the last 6 months of the year (including parents who have never married each other, see King v. Commissioner, 121 T.C. 245, 251 (2003)).  The record clearly shows that petitioners did not live together during the last 6 months of 2004 and, for 2004, together met the joint support and custody tests of section 152(e).  For that reason, under section 152(e)(1), the custodial parent is the parent "having custody for a greater portion of the calendar year" notwithstanding that the other parent may have contributed more to the child's support than did the custodial parent.[6]

---

[5]Both Mr. Knochelmann and respondent appear to rely at times on provisions in versions of sec. 152 and the regulations thereunder that are inapplicable to 2004.  We do not discuss those arguments.

[6]Mr. Knochelmann argues that, because he provided more than half of EJK's support, "any analysis" of the law that deprives him of a dependency exemption deduction for EJK is (without his consent) a violation of due process.  His argument has no merit. See Harris v. Commissioner, T.C. Memo. 2007-239, in which we addressed a similar argument and stated:

(continued...)

For purposes of section 152(e)(1), for parents who have joint custody of a child, the custodial parent is the parent with "physical custody" for the greater portion of the calendar year. E.g., Dail v. Commissioner, T.C. Memo. 2003-211; see sec. 1.152-4(b), Income Tax Regs. Neither the statute nor the regulations prescribe how to quantify the time each parent has physical custody; rather, the facts of each case determine the appropriate method. For example, we have considered both the number of nights and the number of hours a child spends with each parent. See, e.g., McCullar v. Commissioner, T.C. Memo. 2003-272 n.2 ("For periods in which the child is regularly attending school, we believe it is appropriate to quantify time spent with a parent through the number of nights spent together."); Dail v. Commissioner, supra (mother was custodial parent because she had physical custody each week from 6 p.m. Thursday until 8 a.m. Monday and for 2 to 3 weeks during the summer); Valarian v. Commissioner, T.C. Memo. 1996-511 (father was not custodial

---

6(...continued)
Because section 152(e) eases the administrative burden of the IRS and thereby advances enforcement of the statute in a rational way, it furthers a legitimate congressional purpose. Knight v. Commissioner, * * * [T.C. Memo. 1992-710, affd. without published opinion 29 F.3d 632 (9th Cir. 1994)]. Therefore, section 152(e) does not violate the Due Process Clause of the Fifth Amendment to the Constitution of the United States. Id. * * *

parent because children resided with mother and spent approximately 30 hours a week with father).

Ms. Bjelland had physical custody of EJK for the greater portion of 2004 measured either by the number of hours or the number of nights he spent with her.  Mr. Knochelmann's proposed "waking hours" method is unworkable and its underlying rationale is unpersuasive.  There is no objective way to allocate the costs associated with a dependent to any particular hour.  Moreover, we fail to see how costs such as rent and utilities, just to name a few, cease accruing on behalf of a dependent simply because he is asleep.  For 2004, we find that Ms. Bjelland was the custodial parent of EJK.

On that ground, we further find that, for 2004, EJK was Ms. Bjelland's dependent.  For that reason, she is entitled to claim the dependency exemption deduction, the child care tax credit, and the child tax credit.  Mr. Knochelmann is not entitled to any dependency exemption deduction, child care tax credit, or child tax credit.  Moreover, given the similarity between the temporal requirements for head of household filing status and for custodial parent status, we find that he does not qualify as a head of household under section 2(b)(1).

Decision will be entered for petitioner in docket No. 20407-07 and for respondent in docket No. 21208-07.